## ROSE v. THE STATE.

1. The period of time contemplated by the words "days of election" as used in section 446 of the Penal Code, wherein it is declared to be a misdemeanor for any person to sell, give, or furnish spirituous, intoxicating, or malt liquors to another, within two miles of an election precinct on such days, is a day of twenty-four hours, commencing at midnight preceding the opening of the polls, and ending at midnight succeeding the close of the polls.

2. An election for constable, held under a general law which provides for such an election on the same day in each militia district of the several counties of this State, is a State election within the meaning of the statute which forbids the sale or furnishing of intoxicating liquors to any person on days of election, State, county, or municipal; and the fact that the official duties of the officers elected are confined to respective counties or subdivisions of counties does not change the character of the election.

Argued April 3, — Decided April 25, 1899.

Indictment for selling liquor. Before Judge Candler. Fulton superior court. September term, 1898.

*Hamilton Douglas* and *N. J. & T. A. Hammond*, for plaintiff in error.    *C. D. Hill, solicitor-general*, contra.

LITTLE, J.    The indictment under which the plaintiff in error was tried and convicted was founded on section 446 of the Penal Code, which reads as follows: "Any person who shall sell, give, or furnish spirituous, intoxicating, or malt liquors to any person, in any quantity, within two miles of any election precinct, on days of election, either State, county, municipal, or primary elections, or elections held under the local option liquor law, shall be guilty of a misdemeanor." The two questions presented for our consideration are: First, do the words "days of election," as they appear in the statute, limit the period of time during which liquors shall not be sold, given or furnished, to the hours during which the polls are to remain open as prescribed by law, or do such words mean to fix such time as a day of twenty-four hours, commencing at midnight preceding the opening of the polls for an election, and ending at midnight succeeding the close of the polls? Second, whether an election for constable is a State, county, or municipal election.

1. So important did the framers of our constitution regard the inhibition of the sales of intoxicating liquors on days of election, that in section 5, article 3 of the constitution of 1877 they declared that the General Assembly should make provision to forbid the sale, distribution, or furnishing of intoxicating drinks within two miles of election precincts on such days. The section of the Penal Code quoted above is the result of that constitutional mandate.    The evident purpose, both of the framers of the constitution and of the General Assembly which enacted the law in harmony therewith, was to make such an outlawry of intoxicating liquors on days of election as would not only protect the peace and preserve the order desired on such occasions, but would also tend to promote a calm and sober exercise of the important right of suffrage, upon which the protection and prosperity of this republican government so much depend.    But while this purpose is evident, the question is, whether, in the execution of that purpose, it was the intention of the lawmakers to forbid the sale and furnishing of liquor only during the time in which votes were actually being

deposited, or whether it was intended to make such restriction apply to a fixed time preceding and subsequent to the hours in which the votes were actually being cast. We have no other method of ascertaining the intention of the framers of this law than to regard the mischief sought to be provided against, and the language used in providing the remedy. It is declared in Potter's Dwarris on Statutes, p. 193, that, in exploring the intention of the legislature by the commonest and most natural signs, that is, words and context, "the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use." Again, on page 203, the same author says: "In interpreting the law, judges are to explore the intentions of the legislature, yet the construction to be put upon an act of parliament must be such as is warranted by, or at least not repugnant to, the words of the act." Our Political Code, § 4, par. 1, declares that the ordinary signification shall be applied to all words, except words of art, or connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject-matter.

The argument of counsel for the plaintiff in error is, that the word "day" is used in the statute in a conventional sense, that is, that the law fixes certain hours during which elections are to be held, from 7 a. m. to 6 p. m. at the court-house, and from 8 a. m. to 3 p. m. at the precincts; that those hours constitute the day of election referred to in the statute, and not the time which elapses between two successive midnights. Mr. Blackstone, in the second book of his Commentaries, p. 141, says: "In the space of a day, all the twenty-four hours are usually reckoned, the law generally rejecting all fractions of a day in order to avoid disputes." This court, in a number of cases, has held that fractions of a day are not to be considered. Such rulings may be summed up in a terse phrase used by Judge McCay in the case of *Russell* v. *Carr & Co.*, 38 *Ga.* 462, when he said, "The general rule is, that the law makes no fractions of a day." Courts in other jurisdictions have been called on to construe the same and similar words, in statutes

enacted for the same purpose. An act of the Texas legislature was framed as follows: "During the entire day of any election in this State, for municipal, county, district, or State officers, it shall be unlawful for any barroom, saloon, or other place, house, or establishment where vinous, spirituous, or intoxicating liquors are sold, to be open," etc. In that State it was provided by law that State elections should be held from 8 a. m. to 6 p. m. on a designated day; and the question was directly made in several cases before the Texas Court of Appeals, as to what meaning should be given to the words "entire day" in this statute. In the first of these, vol. 7, p. 33, that court said: "Evidently the legislature, by the use of the words 'entire day' meant more than from sunrise to sunset, or from 8 a. m. to 6 p. m. Generally, in legal signification, the word 'day' includes the time elapsing from one midnight to the succeeding one. . . The law takes no cognizance of fractional parts of a day." And it sustained a charge of the trial judge to the effect that the words "entire day," used in the statute, meant a civil or natural day, that is, from midnight to midnight. This ruling was affirmed in the case of Lawrence v. State, 7 Tex. App. 192. The same court, in a later case, that of Janks v. State, 15 S. W. Rep. 815, reaffirmed the ruling made in the cases supra, and ruled in the latter case that the word "day," as used in the Texas statute, includes the time elapsing from 12 o'clock midnight to the succeeding one, and that it is not to be understood as denoting only the hours during which the polls are open. But it may be said that the words of the Texas statute are more comprehensive and embrace a greater period of time than the words of our statute, because the former used the words "entire day" of an election, while our statute uses the word "day" of election. There is, however, no real distinction between the two. If the hours fixed for opening and closing the polls constitute the day of election, necessarily the same words constitute the *entire day* of the election. But, by reference to the cases cited, it will be seen that the statute is considered in a broader light, and that the legal meaning of the word "day" is determined. The court in the last case cited says, that generally, in legal signification, the word "day"

includes the time elapsing from one midnight to the succeeding one, and as used in the statute meant twenty-four hours.

In the case of Kane v. Commonwealth, 89 Pa. St. 522, the Supreme Court of Pennsylvania construed the meaning of the word "day," as used in the statute of Pennsylvania, which was as follows: "It shall not be lawful for any person, with or without a license, to sell any person any intoxicating drinks on any day on which elections are now required to be held." In that case, the trial judge instructed the jury as follows: "I charge you, as a matter of law, distinctly and positively, that any sale of liquor made upon the day upon which elections are held is a misdemeanor, and that the word 'day,' as used in that section, applies to the whole twenty-four hours, beginning at midnight of election morning and ending at midnight of election night." The Supreme Court, Chief Justice Sharswood delivering the opinion, said: "We have no doubt that the court were right that the word 'day,' as used [in the statute] includes the whole twenty-four hours of the day upon which an election is held." A like construction was given to the word "day," in a similar statute, by the Supreme Court of Ohio in the case of Shuck v. State, 50 Ohio St. 493, and by the Court of Appeals of Kentucky in Commonwealth v. Murphy, 95 Ky. 38. These authorities we think are in harmony with the evident purpose of our lawmakers, and we must rule that the legal effect of our statute as embodied in the Penal Code is to declare it a misdemeanor for any person to sell, give, or furnish spirituous, intoxicating, or malt liquors to another, within two miles of any election precinct, from midnight preceding the opening of the polls until the succeeding midnight.

2. It is insisted by counsel for the plaintiff in error that an election for constable can not be treated as either a State or county election, and an elaborate argument is made to show that a constable is neither a State nor a county officer. The reply to this contention is, that the character of an election is not to be determined alone by a reference to the official duties imposed by law on the officer elected, nor the territory in which by law he exercises those duties, but rather to the manner of holding and conducting the election. Under our law, general

elections are held at fixed times and at the several places designated as polling-places, in the various counties in the State, by the qualified voters of such counties, for the various officers charged with governmental functions.   We have no system of State elections, in the sense that the voters of the State can participate in an election for any office without regard to the county of the residence of the voter.   On the contrary our constitution, art. 2, sec. 1, par. 2, requires a residence of six months in a particular county, as one of the qualifications of an elector.   We must therefore take it that the State election contemplated by the statute is an election in which the qualified voters of the State, in their respective counties, on the same day select officers provided by law.   Whether the officers to be elected exercise their duties throughout the State, or in the various counties or subdivisions of counties, does not affect the character of such an election — for instance, ordinaries, sheriffs, clerks of the superior courts, and other officers, generally denominated county officers, are elected by the qualified voters of the several counties in this State on a given day.   Such is a general State election, because the voters throughout the State, on that day, are entitled to participate and select these officers for the various counties.   If there should occur a vacancy in the office of ordinary, sheriff, or clerk of the superior court of a particular county, an election held to fill such vacancy is, of course, to be participated in by the qualified voters of that particular county only — hence that election would not be a State election, but necessarily a county election.   So that the character of the election held is not determined by the scope of the duties imposed by law on the officer to be elected.   All the territory of this State is embraced in the several counties, and each county is subdivided into militia districts, according to territory and population.   Civil Code, § 330.   That an officer is restricted, in the discharge of his official duties, to one of the counties or subdivisions, does not make his election a county or militia district election, when in pursuance of a general system of selecting all such officers for each district an election is held throughout the State on the same day.   The result of such an election is to provide officers of this class for the entire State.

Construing the provisions of sections 101, 102, 105 of the Civil Code, we find that constables are to be elected by the qualified voters of the districts in each county on the same day, once in two years. And inasmuch as elections for these officers are held throughout the State on the same day, the election is a general one, and may be properly denominated a State election, as contemplated in the section of the code under consideration. Referring, however, to the nature of the duties of a constable, we find that in some jurisdictions it has been held that that officer is regarded as a quasi State officer. The Supreme Court of Missouri, 69 Mo. 508, rules that a constable is not a city officer; he is a State officer in the same sense that sheriffs and clerks of courts of record are State officers, although they can only discharge the duties of their respective offices within a limited territory and not throughout the State. By our law it would seem that a constable is recognized as a county officer. Our constitution, in art. 11, sec. 2, par. 1, declares that county officers shall be elected by the qualified voters of their respective counties or *districts*, and shall hold office for two years. By section 35 of the Civil Code it is provided, that unless an otherwise qualified voter shall register as prescribed, he shall not be permitted to vote in any election for presidential electors, for members of Congress, for Governor, for State-house officers, for members of the General Assembly, for county officers, for county commissioners, for justices of the peace, for constables, for members of the county board of education, where chosen by the people, nor in any other popular election to fill *any other State or county office*. This section unmistakably treats a constable, by express reference, as either a State or county officer. Section 4092 of the Civil Code prescribes the oath of office which each constable must take and subscribe before he enters on the duties of his office, as follows: "I swear that I will duly and faithfully perform all the duties required of me as a constable of the county of ————, according to the best of my ability and understanding." By other provisions of our code, we find that a constable is an officer charged by the law with the performance of important duties, entitled to emoluments fixed by the statute, his tenure of office prescribed, that he is elected

by the people of the county who reside within the district where he is required to exercise the functions of his office, under rules prescribed for the election of other officers of the State, and must take an oath before he can lawfully discharge any of such du-, ties. Certainly, therefore, a constable is a public officer (Mechem on Offices and Officers, §9), and it would seem that, both by our constitution and statute law, recognition is given to him as a county officer. But whether a constable is a State or a county officer, he is elected at a general election held throughout the State on the same day; and such an election is a State election, and therefore within the prohibition of the section of the Penal Code on which the indictment in this case was based. It follows, that the judgment of the court below must be

*Affirmed. All the Justices concurring.*