## THE STATE v. GENERAL ARMSTRONG, Appellant.

### Division Two, February 25, 1902.

1. **Indictment: RAPE: CHARGE OF SEX.** An indictment which charges that defendant "did in and upon Ivy B. Turney, unlawfully...... make an assault and *her*, the said Ivy B. Turney, then and there unlawfully, forcibly, and against *her* will feloniously......did ravish." etc., sufficiently charges that the prosecutrix was a female, although it does not specifically say so.

2. ————: **NAME OF JUROR: MISTAKE OF TYPEWRITER.** The transcript sent by change of venue to another county, says the court appointed "John L. Calrk" foreman of the grand jury, but the indictment is indorsed "a true bill, John L. Clark, foreman," and the record recites that the "indictment is by the court examined and found to be indorsed a true bill by the foreman, John L. Clark." The entry of the impaneling of the grand jury shows that John L. Clark was sworn as a member, and that no man named "Calrk" was. *Held*, that Clark's name was, by misprision of the typewriter who copied the transcript, misspelt, and that the foreman of the grand jury did indorse it. And where the record shows that Charles Hall was sworn as a grand juror, and that no such person as Charles Hallm was so impaneled, it will be held that the typewriter by mistake struck the wrong key, and added a letter *m*, and that Hallm was not a member of the grand jury.

3. **Jury: IN CHARGE OF UNSWORN OFFICER.** It is not reversible error to put the panel, from the time it is made up until they are sworn to try the case, in charge of an officer without swearing him.

4. **Rape: PENETRATION.** Where one officer testified that defendant stated to him that he struck the prosecutrix, and "then tore her drawers and got on her and accomplished the rape," and another that he nodded his head and said "yes," when he asked him, "Did you do it?" and the physician who was first present after the assault upon

Vol 167 mo—17

State v. Armstrong.

the girl, who was only about sixteen years old, stated he made a digital examination and "found the hymen absent," there was sufficient evidence of penetration to permit the case to go to the jury.

5.    ——: CONFESSION: COMPETENCY.  A statement without promise or hope of leniency to the defendant made by the officer in charge of him, even at a time when he was informed that a near-by crowd was probably a mob, that he had better tell the truth about the charge of having ravished a girl, does not make inadmissible the confession then made by the defendant to such officer.

6.  **Age of Defendant**: COMPETENCY.  It is always competent to show the size and age of defendant and the knowledge of the witnesses in respect thereto, and particularly is this true when the evidence bears directly upon his capacity to commit the crime charged.

7.  **Rape**: PUNISHMENT.  Where the jury has found the defendant, who is sixteen years old, guilty of rape and assessed the punishment at death, he is punishable in the same manner and to the same extent as provided by law for persons over eighteen years of age.

8.    ——:  ——: REMARKS OF PROSECUTING ATTORNEY: NO EXCEPTION.  Unless there is an exception saved at the time to a remark of the prosecuting attorney that if the jury gave defendant only a penitentiary sentence he could only be sent to the reform school on account of his age, or if defendant's attorneys say they did not hear the remark, then unless some affiant states the remark was in a low tone, there can be no reversal on that account, because the matter was not brought to the attention of the trial court.

9.    ——: CONVICTION: SUFFICIENCY OF EVIDENCE.  The evidence in this case was sufficiently substantial to justify the jury in finding that the defendant had raped the prosecuting witness and to justify his hanging under the statute.

10.    ——: PUNISHMENT: NO EXCEPTIONS.  The Supreme Court will not consider the failure of the trial court to instruct upon the punishment prescribed by the statute, if the appellant saved no exceptions to the failure of the court to instruct upon all the law of the case.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes,*
Judge.

AFFIRMED.

*E. C. Hall* for appellant.

State v. Armstrong.

(1) The indictment does not charge any offense and is not indorsed by the foreman of the grand jury. State v. Brooks, 94 Mo. 121; State v. Burgess, 24 Mo. 381; State v. Orrick, 106 Mo. 111; State v. Mertins, 14 Mo. 94; State v. Murphy, 47 Mo. 274. (2) The only pretense of testimony of the penetration is given in the opinion of the prosecuting witness who says, "I don't know, but think the male organ penetrated my body," and the testimony of an alleged confession of defendant to the witness Shoemaker. If men can be hung upon such testimony as this, it would be unsafe to live in such a country. Here the prosecuting witness does not allege the rape. The examining physician, though called immediately, will not say it was rape. An angry crowd of citizens immediately arrest the defendant, search him and carefully examine his clothes because they have found that the girl was menstruating. They saw him as he went into the lot and were only two hundred yards away and know that he did not have time to change his clothing. Then they examine him and have the doctor to carefully examine his privates and his clothing and found no indications that he was the guilty party. It then remained for this Shoemaker, a member of the mob that afterwards formed, and who was acting as an officer at the time, to exercise his persuasive powers upon the little "ninny" and to get this pretended confession, the very earmarks of which show careful doctoring. The well known prejudice and abhorrence of the crime of rape in the minds of jurors calls for the exercise of the cool deliberation and judicial determination of the legal effect of the facts in order that there may not be a rape of the law and a travesty upon justice in this case and the establishment of a precedent that may be inconvenient and injurious in the future. There was no direct evidence, if any evidence of penetration. (3) The court should have instructed the jury upon the circumstantial evidence and age of defendant after his age was shown in evidence.

*Edward C. Crow,* Attorney-General, and *Jerry M. Jeffries* for the State.

(1) The indictment in this cause properly charges the offense and is properly indorsed by the foreman of the grand jury. To charge this offense it is not necessary that the indictment contain an express averment that the party injured is a woman. The use of the pronoun "her" sufficiently indicates the sex. State v. Hammond, 77 Mo. 157; State v. Warner, 74 Mo. 83. The indictment need not allege the age of the prosecutrix if it alleges the act to have been done forcibly and against her will. State v. Haix, 109 Mo. 654. (2) The jury, after having been selected, and before they were sworn, were permitted to retire in charge of the sheriff and by him were kept together until the following day when they were sworn to try the cause. The sheriff was not specially sworn. The defendant complains of this action of the court as error. Unless there is something showing that the jury was tampered with, no complaint can be made. State v. Orrick, 106 Mo. 111; State v. Carlisle, 57 Mo. 102; State v. Daugherty, 55 Mo. 69; State v. Underwood, 76 Mo. 634. The law requiring the jury to be put in the charge of a sworn officer only has application and is put in force after the argument of the counsel and the jury retires to deliberate on their verdict. The record in this case shows that when the jury retired they were placed in charge of a sworn officer. State v. Underwood, 76 Mo. 634; R. S. 1899, sec. 2629; Thompson & Merriam on Juries, sec. 303. (3) Appellant contends that the prosecuting attorney made use of improper argument in his closing remarks to the jury. The record shows no exceptions were taken at the time and appellant admits as much and says that the statement complained of was made in a low tone of voice and his attorneys did not hear the same. They furnish affidavits of that fact and to prove that the attorney did make the statement furnish an affidavit by one of the jurors. They

offer these affidavits as excuse for their not having saved their exceptions. In the first place, if the State's attorney did make the statement "that if the defendant was given a penitentiary sentence he could only be sent to the reform school on account of his age," there would be no objections and such a statement would be perfectly proper. In either case, however, the party objecting must save his exceptions or this court will not notice the same. State v. Forsythe, 89 Mo. 667. The statement made by the prosecuting attorney was true according to our law. The truth can not be assigned as error. Where the prosecuting attorney states a fact of law truthfully there is no error. State v. Emory, 76 Mo. 348. (4) The evidence of the admission of defendant as testified to by witness Cave and by the witness Shoemaker was properly admitted, because there is no suggestion in the evidence that the admissions were made on promises or expectations of reward and with fear or under duress. (4) The defendant contends that there is no evidence to warrant a conviction. Taking the evidence of Miss Turney, the evidence of Shoemaker, the admission made to the witness Cave, it would seem that there was ample evidence to submit the question to the jury and to warrant them in finding the defendant guilty. It is true, aside from the admissions of the defendant, there is no direct evidence of penetration, but that is not necessary. It may be inferred from the circumstances. Were it necessary to prove guilt of this offense by direct evidence, it would be well to wipe the law off of our statute books. Even where the prosecutrix stands alone, unsupported and uncorroborated, there is no such an equal poise of oath against oath as will overthrow a conviction and the prosecution will not on that account fail for the want of sufficient evidence. State v. Patrick, 107 Mo. 147; State v. Marcks, 140 Mo. 656. That the prosecutrix did not tell her condition or the crime that had been perpetrated at first is not necessarily evidence in favor of the defendant. State v. Eby,

State v. Armstrong.

147 Mo. 535. The weight of the evidence is always a question for the jury. State v. Sanford, 124 Mo. 484.

GANTT, J.—At the September term, 1900, of the circuit court of Clinton county, the defendant, General Armstrong, was indicted for rape. He applied for and obtained a change of venue from Clinton county to Platte county. He was tried in the circuit court of Platte county at the December term, 1900, and convicted, and from that conviction and his sentence thereon, he appeals.

The indictment is in these words:

"State of Missouri, } ss.
 County of Clinton. }

"In the Circuit Court, September term, 1900.

"The grand jurors for the State of Missouri, summoned from the body of Clinton county, charged and sworn, upon their oaths, present that one General Armstrong, late of the county aforesaid, on the 12th day of July, 1900, at the county of Clinton, State aforesaid, did, in and upon Ivy B. Turney, unlawfully, violently and feloniously make an assault, and her, the said Ivy B. Turney, then and there unlawfully, forcibly and against her will feloniously did ravish and carnally know, against the peace and dignity of the State.

"THOMAS W. WALKER, Prosecuting Attorney.

"A true bill: JOHN L. CLARK, foreman of the grand jury."

He was duly arraigned and entered his plea of not guilty.

The evidence was in substance the following:

Ivy B. Turney, a young white girl of the age of sixteen years, lived at the village of Turney in Clinton county, Missouri, on July 12, 1900, and had lived there since she was

eight years old, and gone to school.   She had engaged in de-
livering baking powders on that day to different families in
the neighborhood of Perrin, another village in said county.
She had a buggy and horse, and went alone.   She started
about nine o'clock in the morning of July 12, 1900, from Per-
rin, to deliver the baking powders.   She had stopped at the
homes of several families.   After leaving Mrs. Dunn's and
while driving along on the public road to the residence of Mrs.
Carey, to make another delivery of goods, she testified she
saw the defendant, a negro boy, riding a white horse herding
some cows along the road.   Between Mrs. Dunn's and Mrs.
Carey's, there was a small ravine, out of the sight of each of
these houses.   After leaving Mrs. Dunn's she looked back and
saw the defendant was following her in a gallop, whereupon
she drove rapidly to get away from him, but he overtook her,
caught the lines and pulled her horse to the right side of the
road, and said to her, "Give me a dollar."

She told him she would give him everything she had if
he would only leave her alone.   At this, she says, he became
very angry and gritted his teeth and caught her and dragged
her from the buggy, and struck her in the face.   She resisted
him with all her strength, and tried to scream but he caught
her by the throat and she became unconscious.   When she
regained consciousness she found her skirt was down, her un-
derclothes torn and rumpled, and the napkin she wore on ac-
count of her menstruation at the time, removed.   She saw
him going down the road.   She drove first to Carey's and
stopped about five minutes, and then she drove at once to Mrs.
Boone's, about one-half mile, where she told the story of her
frightful experience.   Mr. Boone gathered two or three neigh-
bors and they immediately went to the house of defendant's
parents, took defendant in  charge and carried him to Mr.
Boone's where the prosecutrix was in bed, and she identified
him positively as her assailant.

In the meantime Dr. Sturgis, who resided in Perrin, was

called in, and he testified that he found prosecutrix suffering from extreme nervousness, her pulse about 90. He found her right hip and right side considerably bruised and her right arm partially paralyzed. He made a digital examination, and found the hymen absent, and menstruation present. He treated her seven or eight days before she was able to go to her parents' at Turney.

Prosecutrix testified to a soreness in her private parts which she had never before experienced, but was unable to state from her unconscious condition whether penetration had occurred. Examination was made by Dr. Sturgis, of the defendant's person, but he discovered no stains upon his clothing or person, at that time—some two or three hours after the alleged outrage.

The witnesses who arrested defendant at his father's, testified he had on a freshly laundried shirt. On the other hand, his mother and father testified he had not changed his shirt since Sunday, and this was on Thursday. The weather was very warm, and the roads dry and dusty at the time.

The defendant was taken to Plattsburg, the county seat, and as the indignation was very great, the sheriff, Wiser, took the prisoner to Kansas City for safe keeping, and to protect him from violence. On the fourteenth of July, the marshal of Plattsburg, Mr. Moody, and Joseph Shoemaker, were returning from Kansas City with the prisoner, taking him to the Plattsburg jail. It seems they were in some way advised that a large crowd had assembled at Kearney, a station in Clay county on the road from Kansas City to Plattsburg, and there was danger of violence to the prisoner. When they reached Kearney, Edgar Cave, the deputy sheriff of Clay, and Moody, the marshal, managed to keep the attention of the crowd while Shoemaker took the prisoner off the train and down the railroad track, about a quarter of a mile.

On this trip, and while hiding from the crowd, Shoemaker testified the defendant asked him what the crowd was

doing and he told him it was a mob, and told him that if he did do this it would be better to tell the truth about it. Thereupon the prisoner told Shoemaker that on the morning of the twelfth he was passing the place where Mr. Berryman lived and saw the prosecutrix in a buggy. "I rode after her and caught up with her and grabbed her by the shoulder and pulled her out of the buggy and she fell almost on top of me." Shoemaker asked if he struck her, and he said. "Yes, I struck her once, and then I tore her drawers and got on her and 'accomplished the rape.' After a little while I got scared and got up and started to my horse and I saw her get up and get in the buggy and drive on. I got on my horse and went home, and then these men came and got me."

Shoemaker testified positively that he held out no inducement to defendant to make this statement. Sheriff Wiser testified that defendant seemed to be very much frightened when he was taking him to Kansas City. The defendant in his own behalf testified that Mr. Shoemaker tried to make him confess and he wouldn't do it; that he then said he would let the mob get him and drew his revolver on him, but he made no confession to him such as detailed by Shoemaker. Shoemaker denied that he drew his revolver on the defendant and denied that he told him he would let the mob get him. Denied that he threatened him in any way.

The court ruled the admissions of defendant were competent, to which defendant by his counsel excepted for the reason that the evidence showed defendant was under sixteen years old, and under duress and in great fear at the time, and the evidence was incompetent for these reasons.

Edgar Cave, deputy sheriff of Clay county, testified that he was on the train with Moody and Shoemaker on the day they returned with the prisoner from Kansas City to Plattsburg, and said to defendant, "General, do you know you had a pretty narrow escape Saturday night?" He answered he did not. Cave then said, "The people seem to be after you

pretty hard," and he must have committed an awful crime the way they were after him, and said, "Did you do it?" to which defendant first nodded his head by way of assent, and then looked up and said, "Yes." Mr. Cave asked him what made him do it, and he said he didn't know.

Mr. Wingate, a gentleman living in the neighborhood of Perrin, testified, that on the afternoon of July 12, 1900, he found a pin, a lady's hair ornament, and a blood-stained cloth on the west side of the road about a quarter of a mile south of Mr. Dunn's house, and had kept the pin in his possession from that time until he testified. This pin the prosecutrix identified as one she wore on the day she was outraged, but had never known before when she had lost it.

David Cook testified that he went with Mr. Boone on July 12, 1900, to arrest defendant. When they took him to the schoolhouse they examined him and he noticed defendant's shirt was clean and they asked him if he had changed his clothes after he came home, and he first said, "Yes," but almost immediately he said, "I was not thinking what I said; no." He also denied seeing the girl at all, but he had seen a white man with some kind of blacking brush in his hip pocket going down the field and he expected he went down there to black himself.

Numerous grounds for reversal have been urged in the argument and brief of counsel for defendant.

I. The indictment, it will be observed, does not specifically allege that the prosecutrix was of the female sex, but charges that defendant did in and upon her (setting out her name in full) unlawfully, violently and feloniously make an assault and her, the said Ivy B. Turney, then and there unlawfully, forcibly and against her will did ravish and carnally know.

The objection is without merit.

The exact point was ruled adversely to the defendant's contention in State v. Hammond, 77 Mo. 157, and State v.

Warner, 74 Mo. 83. [1 Wharton's Crim. Law (10 Ed.), sec. 574.]

It is further insisted that the foreman of the grand jury did not indorse the indictment.

To make plain the point made under this assignment, it should be stated that in the transcript sent to the Platte court on the change of venue from Clinton county, the typewriter makes the record state that the "court appoints John L. *Calrk* as foreman" of the grand jury, and the indictment returned in the case against defendant is indorsed by John L. *Clark*, and hence the contention that the duly appointed foreman did not indorse the indictment. Now the full entry of the impaneling of the grand jury shows John L. Clark was duly summoned as a member of the panel of grand jurors and was duly sworn as such. It further appears that no such person as *"Calrk"* was a member of said panel and on the 13th day of September, 1900, the record of said court at the same term recites that the grand jury returned and presented a bill of indictment No. 905, State of Missouri v. General Armstrong, for rape, "which said indictment is by the court examined and found to be indorsed a true bill *by the foreman, John L. Clark.*"

It is apparent that John L. Clark was a member of the grand jury and he was recognized by the court which appointed the foreman as the foreman, and it is equally obvious and clear that no such person as *Calrk* was a member of the grand jury, and that Clark's name was by misprision of the typewriter who copied the transcript misspelt and hence there is nothing in the objection. [State v. Orrick, 106 Mo. 111.]

Equally as frivolous is the assignment that the grand juror Charles *Hallm* was not impaneled, charged and sworn. The record shows that Charles Hall was duly summoned, impaneled, charged and sworn and no such person as Charles *Hallm* was ever a member of the grand jury. The sole foundation

for this point is that the typewriter, who copied the transcript on the change of venue, in striking for the space bar on the machine evidently inadvertently struck the key that contained the "m," and this added the superfluous letter to the name of Charles Hall, who in fact was one of the grand jurors. Counsel is right in saying that Charles *Hallm* was never sworn or charged as a grand juror, but the failure to make him, if he ever existed, a juror does not affect this case.

II. After the panel was selected and before they were sworn to try the case, they were placed in charge of a sworn officer and kept together until the next day when they were duly sworn to try the case. It is now urged as error that the jury was not sworn before they were placed in charge of the officer. No pretense is made that the officer tampered with the jury or permitted any one to approach them or that they were guilty of the slightest impropriety. There was no separation of the jury at any time.

Clearly no error was committed by this action of the court. Neither was it necessary to administer the special oath to the officer in charge at that time.

When finally the evidence was all in, and the arguments closed, it affirmatively appears that the jury was placed in charge of an officer sworn in accordance with the requirements of section 2629, Revised Statutes 1899. [State v. Underwood, 76 Mo. 630.]

III. Error is also predicated upon the refusal of three instructions prayed by defendant.

One was a peremptory direction to find defendant not guilty. Clearly no mistake was made in denying this request. There was ample evidence to justify the submission of the case to the jury under proper instructions.

The court properly refused the first instruction asked by defendant because it had already been given by the court of its own motion in its third instruction.

Neither did the court err in refusing to give defendant's

second instruction, which declared "there was no direct evidence of penetration," and then invoked the rule as to circumstantial evidence.   There was direct evidence of the fact out of the mouth of defendant detailed by two witnesses, and this court can not and will not assume that both or either of the officers deliberately perjured themselves.

In this connection should be considered the objection to the admission of the confessions or admissions by defendant to Shoemaker and Cave.

It will be recalled that Shoemaker testified that after he had taken the prisoner off at Kearney, the prisoner asked him if those men were hunting for him and he told him he supposed they were, but did not know.   Shoemaker said to him he had better tell the truth about this.   Shoemaker positively testifies that he made no threats and held out no promises to defendant to obtain a confession.

The defendant was put on the stand in his own behalf and instead of testifying he had made confessions under threats or promises, denied that he made any confessions whatever, but he testifies Shoemaker drew his revolver on him, but he didn't tell anything.   He testified, moreover, he didn't know the mob was after him.   Shoemaker denied that he drew a revolver on the prisoner.

It is the settled law of this State that a mere adjuration to speak the truth does not vitiate a confession, no threats or promises being employed.   [State v. Patterson, 73 Mo. l. c. 707; Wharton's Crim. Ev. (9 Ed.), sec. 647, and cases cited.]

In order to exclude the confession it must appear affirmatively that some inducement to confess was held out to him by or in the presence of some one having authority.   [Roscoe's Crim. Ev., 54; Wharton's Crim. Ev. (9 Ed.), sec. 689; State v. Patterson, 73 Mo. l. c. 705.]

All that can be made out of Shoemaker's testimony in the way of an inducement amounts to no more than a statement that he had better tell the truth without promise or hope of

leniency, and without any threat.    We think it was clearly admissible.    [State v. Hopkirk, 84 Mo. 278; State v. Phelps, 74 Mo. 128.]

And the same rule must govern as to the evidence of Cave, which was entirely free of any promise or threat.

We are unable to discover any principle of law upon which to base the objection to the introduction of the evidence as to the finding of the hair ornament of the prosecutrix at the place where she testified the assault had been made.    It was a circumstance corroborating both her testimony and the confessions of the defendant.

Neither was there error in allowing the witnesses to tell the age of the defendant.    It is always competent to show the size and age of the defendant and the knowledge of the witnesses in respect thereto, and particularly is this true when the evidence bears directly upon his capacity to commit the crime charged.

The jury having assessed the punishment at death, the defendant was punishable in the same manner and to the same extent as provided by law for persons over the age of eighteen years.

In his motion for new trial defendant assigned as ground for a new trial that the prosecuting attorney in his address to the jury made the statement that if the jury gave defendant a penitentiary sentence he could only be sent to the reform school on account of his age.    No objection or exception was taken to this statement at the time as counsel for defendant made affidavits they did not hear it.    This matter was brought to the attention of the court by affidavit and he denied the motion on this ground, and correctly so.    No affiant made oath that the statement of the prosecuting attorney was made in a low tone and if counsel desired to except to the argument for the State he should have listened to it.    No reason is shown why the defendant should not have been required to save his exceptions at the time, and the prosecuting attorney made no

State v. Armstrong.

misstatement of the law.    [State v. Emery, 76 Mo. 348.]

The evidence supports the verdict.    The character of the prosecutrix was not challenged.    Her testimony was delivered without the slightest exaggeration.    Her evidence locating the defendant in the immediate neighborhood riding a white horse and herding cows about the time she testifies he assaulted her, was corroborated by disinterested gentlemen in the neighborhood, even by defendant himself, though he denies in his evidence seeing her in the buggy, although she rode along the road in which he was herding.    The evidence of the brutal assault was corroborated by Mrs. Boone and Dr. Sturgis, the latter testifying to her bruised condition and her partially paralyzed arm.    The confessions of the defendant corroborated the evidence of the unprotected girl, that he struck her and succeeded in his infamous purpose.

Horrible as is the crime, and loth as we are to credit such a charge, the evidence was sufficient, if believed by the jury, to sustain the charge, and the jury having seen the witnesses and heard them deliver their testimony there is no reason why this court should disregard their verdict.    The judgment is affirmed, and the sentence which the law imposes must be executed.    All concur.

## ON REHEARING.

The defendant by his counsel has moved for a rehearing on the ground that in our opinion we overlooked the point made in his brief and argument at the hearing that the circuit court failed to instruct the jury upon the punishment prescribed by section 7759, Revised Statutes 1899.

We did not fail to consider this point made by counsel, but inasmuch as examination of the record disclosed that the defendant saved no exceptions to the failure of the circuit court to instruct upon all the law of the case, his appeal presented no such question, and hence it was deemed unnecessary

to embody the point in our opinion. We say this much now to advise counsel why we do not enter upon a discussion of the point he made. [State v. Cantlin, 118 Mo. 111, and numerous subsequent cases.]

We can not convict the trial courts of alleged errors which they have had no opportunity to correct. As this is the only ground for a rehearing, the motion is overruled. All concur.