## STATE OF MISSOURI, Respondent, v. BARNETT, Appellant.

### St. Louis Court of Appeals, February 21, 1905.

1. **DRAMSHOP-KEEPER: License: Admissions.** In a prosecution of a dramshop-keeper for the violation of the provisions of the dramshop act, the admission of the defendant, on the trial of the case before the justice of the peace, that he had a license, was competent evidence and sufficient to show that he was a licensed dramshop-keeper.

2. **———: Music in Dramshop.** Where the building in which a dramshop was kept was partitioned off into separate rooms, one of which was used for a barroom and another used in connection with the barroom as a sitting room with an opening between, the suffering of musical instruments to be played in the sitting room was a violation of section 3018 of the Revised Statutes of 1899.

3. **PRACTICE: Error Self-Invited.** A theory of law adopted by both sides in the trial of a case, though erroneous, furnishes no ground for a reversal of the case.

4. **———: Impeaching Witness.** Where the facts testified to by the State's witness in the prosecution for a crime were shown substantially by the witnesses for the defendant, the refusal of the court to allow the defendant on cross-examination to show such witness for the State was prejudiced, was not prejudicial error.

5. **———: Remarks of Counsel: Timely Exception.** Objectionable language used by an attorney can not be reviewed by the appellate court, unless the attention of the trial court was called to such language and proper objection made.

6. **JUROR: Competency: New Trial.** A new trial in a criminal prosecution should not be granted on the ground that a juror was akin to witnesses for the State, where they are not shown to be prosecuting witnesses.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*C. G. Shepard* for appellant.

(1) The court erred in overruling the demurrer to the evidence offered by defendant at the close of the State's testimony. State v. Lentz, — Mo. —, 83 S. W. 970; State v. Heckler, 81 Mo. 417; State v. Kurtz, 64 Mo. App. 123. (2) The defendant was not responsible for the criminal acts of his agents when made against his orders, and the main point in this case was whether or not defendant in good faith had instructed his agent, Billie Barnett, not to allow music about the premises, and the court erred in not allowing defendant to tell to the jury the reason why he was so particular in giving the instructions at the time and all the facts connected with the matter. State v. Riley, 75 Mo. 521; State v. Heinze, 45 Mo. App. 403; State v. Meagher, 45 Mo. App. 571; State v. Baker, 71 Mo. 475; State v. McKane, 110 Mo. 398, 19 S. W. 648; State v. Webber, 111 Mo. 204, 20 S. W. 33. (3) Defendant had a right to show to the jury the amount of interest witness Brasher was taking in this prosecution so they could intelligently weigh his evidence, and in refusing to let counsel for defendant interrogate him on this point on cross-examination, the court committed error, for which this case should be reversed. R. S. 1899, secs. 2637 and 4652; Harpence v. Rogers, 143 Mo. 653, 45 S. W. 650; State v. Pruett, 144 Mo. 92, 45 S. W. 1114. Instruction numbered four, given on behalf of the State, is vicious in this. It comments on the evidence, as well singling out particular facts, and it is error for trial courts to comment on the evidence or single out particular facts and call the jury's attention to them. Oneil v. Blase, 94 Mo. App. 648,

68 S. W. 764; State v. Evans, 158 Mo. 589, 59 S. W. 994. (4) Robert Coppage was not a competent juror to try and determine this cause, for the reason he was a relative of both J. M. Brasher and Steve Pate, the two prosecuting witnesses that were taking such interest in the matter, and the trial court should have sustained defendant's motion for a new trial when this matter was brought to his attention. State v. Walton, 74 Mo. 270; State v. Stein, 70 Mo. 330; Price v. Protection Co., 77 Mo. App. 236; Billinger v. Transit Co., 82 S. W. 536.

*L. L. Collins* for respondent.

(1) The court did not err in overruling defendant's demurrer to the evidence, and in refusing to instruct the jury at the close of the State's evidence that their finding should be for defendant; first, because the information in this case is sufficient. R. S. 1899, sec. 3018, and, second, because whether or not appellant in good faith instructed his bartender not to permit or suffer music in appellant's dramshop was a question of fact to be submitted to the jury, and the burden of proof upon the question of good faith was upon the defendant. State v. Hickler, 81 Mo. 417; State v. Raily, 75 Mo. 521; Rex v. Almen, 5 Burr. 2686. (2) The court did not err in giving instruction numbered four on behalf of the State for the reason said instruction properly declares the law. State v. Heinze, 45 Mo. App. 403.

BLAND, P. J.—The defendant was prosecuted and convicted of a violation of section 3018 of the Dramshop Act, R. S. 1899. The section provides: "A dramshop keeper shall not keep, exhibit, use or suffer to be kept, exhibited or used in his dramshop, any piano, organ or other musical instrument whatever," etc. The punishment for a violation of this section is by a

fine not less than ten nor more than fifty dollars, and in addition thereto the section provides that the dramshop keeper shall forfeit his license and shall not again be allowed to obtain a license to keep a dramshop for the term of two years next thereafter. The jury assessed defendant's punishment at ten dollars and the court rendered judgment for the fine assessed, and a further judgment annulling his license. Motions for new trial and in arrest of judgment proving of no avail, defendant appealed.

On the part of the State the evidence is that the defendant kept a dramshop at Cottonwood Point, Pemiscot county, Missouri. The building occupied as a saloon was divided into three compartments; in the front one is the barroom, in the middle one, designated by the witnesses as the "stove room," was a heating stove and some cases of beer. The third or back room was used as a storage room for liquors in the original package. There is a door opening between the barroom and the "stove room" but no shutter. This room was used as a sitting room by the customers of the saloon. The State's witnesses testified that on the evening of October 3, 1904, a fiddle and guitar were played in the "stove room" from eight to eleven o'clock at night, and that dancing accompanied the music. The defendant's witnesses testified that the fiddling and picking of the guitar did not take place in October, but on the evening of September 19th or 20th, 1904, and that it continued but one hour, the dancing being done by a couple of negroes. The defendant's evidence also shows that no music was played at any time in the barroom and that defendant was not present on the occasion when music was played in the "stove room;" that the dramshop was run by his barkeeper, Bill Barnett, to whom he had given strict instructions not to permit any music to be played in the saloon. Bill Barnett confessed to having received such instructions from defendant but admitted that he dis-

obeyed them by permitting music in the "stove room" on the evening of September 19th or 20th.

The court gave the following instructions for the State, to which defendant objected:

"3.   The court instructs the jury if you believe and find from the evidence that the building in which the dramshop was kept was divided into or partitioned off into separate rooms, yet if you believe said different rooms were used by the defendant in connection with his barroom, said rooms constitute and were a part of such dramshop.

"4.   The court instructs the jury that although you may believe from the evidence that the defendant instructed his clerk not to permit musical instruments to be kept and used in said dramshop, yet unless you believe he did so in good faith for the purpose of preventing said musical instruments from being kept and used in said barroom and not for the mere purpose of attempting to evade the law, you should convict the defendant."

The court gave the following instruction at the request of defendant:

"1.   The court instructs the jury that if you find and believe from the evidence that defendant, William H. Barnett, in good faith instructed and ordered his barkeeper, Billie Barnett, not to allow any music in or about his said dramshop and that the said Billie Barnett, in violation of the orders of the defendant, permitted said music to be played in defendant's dramshop, then defendant is not liable for such violation of his orders by his agent or bartender, and you should find the defendant not guilty."

The defendant asked the following instruction which the court refused:

"The court instructs the jury that defendant is charged with having music in his dramshop; to constitute this offense the music must have been in the room or place where drinks were sold, or the business of a

dramshop was carried on and unless you find and believe from the evidence in this case that music was permitted in the dramshop, you should find the defendant not guilty.''

To show that the defendant was a licensed dramshop keeper, the State proved by one witness that, on the trial before the justice (the case having been first tried before a justice and then appealed to the circuit court) the defendant stated to the justice that he had a dramshop license and produced the license, which the witness saw but did not read. The State, over the objection of defendant, also offered and read in evidence, from the records of the county court, an order of the court granting the defendant a license, the records showing that the license had been issued to him. The ground of the objection is, that the record was not the best evidence, that the license was the primary evidence and no notice having been served on defendant to produce his license, if he had one, the State could not offer secondary evidence. We discussed this identical question at the present term in the case of State v. J. Ira Barnett and do not deem it necessary to further discuss the question here. The admission of defendant that he had a license, on the trial before the justice, testified to by one witness, was sufficient to show that defendant was a licensed dramshop keeper, and the admission of the county court records, if erroneous, furnishes no sufficient ground for reversal.

2. The defendant complains of the instruction (No. 3) given for the State. The three rooms were all under one roof, on the same floor, separated only by thin board partitions through which were door openings; all three of the rooms were used by defendant in his saloon business, the ''stove room,'' in which the music was played, being heated for the accommodation of defendant's customers and was used by them as a sitting room when loafing about the saloon. This evi-

dence, we think, clearly warranted the third instruction.

3.   Defendant also complains of the fourth instruction given for the State.   This instruction not only correctly declared the law but is in harmony with number one asked by and given for the defendant.   A theory of the law adopted by both sides, though erroneous, furnishes no ground for reversal.

4.   On cross-examination of Brasher, a witness for the State, defendant undertook to show that he was prejudiced against him by showing that the witness and others of his neighbors had agreed or conspired together to stop the dramshop business at Cottonwood Point, and that the witness had appeared before the county court and opposed the granting of a saloon license to defendant.   The court refused to permit the defendant to show these facts.   The only evidence given by Brasher was that he heard music in the saloon on the evening of October 3, 1904, and that it continued until about eleven o'clock.   The defendant proved by his own witnesses that music was played in the "stove room" from eight until about nine o'clock on the evening of September 19th or 20th, 1904.   The State was not confined to any particular day.   It could prove the charge by showing that music was played in the saloon on any day within a year next before the filing of the information, so that the fact that the music was played in the saloon, as charged in the information, was as well shown by the defendant's witnesses as by the testimony of Brasher, and for this reason to have shown that Brasher was prejudiced against defendant was of no consequence in the case, and the error, if it was error, in denying the defendant the opportunity to show that Brasher was a prejudiced witness, was non-prejudicial.

5.   Complaint is made of remarks attributed to the prosecuting attorney in his closing address to the jury. The record does not show that the objectionable lan-

guage was objected to at the time it was used or that it was called to the attention of the court; unless this is done misconduct of any attorney in his remarks to the jury cannot be reviewed by an appellate court. [Massengale v. Rice, 94 Mo. App. 430, 68 S. W. 233; State v. Armstrong, 167 Mo. 257, 66 S. W. 961.]

In his motion for new trial, defendant alleges that Robert Coppage, one of the jurors, was incompetent for the reason he is akin to J. M. Brasher and Steve Pate, alleged to be prosecuting witnesses in the case. The information was sworn to by the prosecuting attorney. The names of Brasher and Pate, with two others, are indorsed on the back of the information as State witnesses, not however as prosecuting witnesses. Brasher testified on cross-examination that he filed the affidavit before the justice. The affidavit itself is not in the record, and for this reason we are not informed of its contents, however, we do know from the record that the affidavit was not used or filed in connection with or as a foundation for the information, and it does not appear by the information or by any paper in the case, or any way whatever, that either Brasher or Pate were prosecuting witnesses and for this reason the court very properly refused to grant a new trial on the ground that Coppage was akin to either of them.

There is abundant evidence in the record to support the conviction, and the judgment is affirmed. All concur.