State v. Meagher.

---

## STATE OF MISSOURI, Respondent, v. MEAGHER, Appellant.

St. Louis Court of Appeals, April 16, 1907.

1. DRAMSHOPS: Election "Day." A "day" is twenty-four hours beginning and ending at midnight, so that keeping a dramshop open for business, in the evening after the polls are closed on a general election day, is a violation of section 3011, Revised Statutes 1899.

2. ————: License: Secondary Evidence. In the prosecution of a dramshop keeper for keeping his dramshop open on election day, where no notice was served on the defendant to produce

his license, but it was proved without objection that the sheriff's register showed the defendant paid a license, and that defendant conducted a dramshop, and the records of the county court showed a license was issued, this was sufficient to show defendant was a dramshop keeper.

3. **EVIDENCE: Specific Objection: Necessary.** Objection to secondary evidence, offered to prove a fact, on the ground that it is "incompetent, irrelevant and does not tend to prove any issue in the case," will not be considered on appeal; the objection is too general.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*T. D. Steele* for appellant.

Do not the very words of the statute (sec. 3011) show that it was the intention of the lawmakers to prohibit the open saloon and the sale of liquors therein during the progress of the election, so that the voters could exercise their right of suffrage free and clear of any influence that the saloon might bring to bear on them up until the polls were closed? But what effect could the open saloon or the sale of liquors therein have on the election after the polls were closed and the election over? Wooster v. State, 6 Baxt. (Tenn.) 533. The State failed to make any showing that notice had been given defendant to produce his license, in order to introduce secondary evidence and this showing is an absolute prerequisite. State v. Kurtz, 64 Mo. App. 123; State v. Reppetto, 66 Mo. App. 251; State v. Mulloy, 111 Mo. App. 679; State v. Barnett, 110 Mo. App. 594.

*D. H. Kemp* for respondent.

BLAND, P. J.—On information filed by the prosecuting attorney, defendant was convicted of a violation of section 3011, Revised Statutes 1899, which prohibits a licensed dramshop keeper from keeping his dramshop

open on Sunday, or on any general election day. The facts are that November 8, 1904, was a day on which a general election was held in this State, and on said day defendant was a licensed dramshop keeper, in the city of Monett, Barry county; that after the polls were closed on said day, in said city, at six o'clock p. m., defendant opened his dramshop for business and kept it open until a late hour at night. Section 6991, Revised Statutes 1899, of the election laws, provides: "The judges of each election . . . . shall open the polls at seven o'clock in the morning and continue them open until six o'clock in the evening, unless the sun shall set after six, when the polls shall be kept open until sunset."

1. Defendant contends that by the language of this section, an election day begins at seven o'clock a. m. and closes at six p. m., or at sunset. The section does not undertake to define an election day, but prescribed the hours of the day between which the polls shall continue open. Bouvier defines a day "in the natural sense, to consist of twenty-four hours, or the space of time which elapses while the earth makes a complete revolution on its axis."

In Fox v. Abel, 2 Conn. 541, Sunday or the Lord's day is said to mean, "the natural or solar day," and the service of legal process after midnight of the day preceding Sunday was declared illegal because served on Sunday. A Georgia statute declares it to be a misdemeanor for any person to sell or give away intoxicating or malt liquors within two miles of an election precinct on any election day. In Rose v. The State, 107 Ga. 697, 33 S. E. 439, it was held an election day was a day of twenty-four hours, commencing at midnight preceding the opening of the polls and ending at midnight succeeding the close of the polls. The Pennsylvania statute prohibits the sale of liquor on any election day. In Kane v. Commonwealth, 89 Pa. St. 533, it was held that an election day, under the statute, included the whole twenty-

four hours, "beginning at midnight of election morning and ending at midnight of elction night." On a similar statute in Texas, the Texas Court of Appeals, in Janks and Newman v. The State, 29 Tex. App. 233, held that the election day in the statute meant twenty-four hours, commencing and terminating at midnight. In Tennessee a statute prohibiting the sale of liquor on any election day defines the day to be from sunrise to sunset; and the Supreme Court of that State, in Wooster v. State, 65 Tenn. 533, held that the defendant did not violate the statute by selling liquor after sunset on an election day. Cur statute does not define the day, but we must take it to mean what the term ordinarily signifies (sec. 4160, R. S. 1899) that is, that it consists of twenty-four hours, commencing and terminating at midnight.

2. Defendant was not notified to produce his license as a dramshop keeper. The records of the county court were produced by the clerk and he was asked by the prosecuting attorney to turn to a page of the record book, showing that a dramshop license had been granted to defendant. The clerk turned to page 73 of a book of the county court records, which showed that a dramshop license was granted defendant July 5, 1904. Defendant's counsel objected to the record for the reason it was "incompetent, irrelevant and immaterial," and did not prove the allegations of the information. The objection was overruled and the record entry showing the granting of the license was read in evidence. Defendant contends that this ruling is erroneous, and cites State v. Barnett, 110 Mo. App. l. c. 595, 85 S. W. 615, and State v. Mulloy, 111 Mo. App. 679, 86 S. W. 569, as supporting his contention. In the Barnett case, the objection made to the introduction of the record showing the granting of the license was, "that the license was the best evidence and unless notice had been served on the defendant to produce it at the trial, secondary evidence was not admissible." Following the case of State v. Lentz, 184 Mo.

State v. Meagher.

223, 83 S. W. 970, in which it was held that to lay a foundation for the introduction of letter press copies of letters, notice should first be served on the defendant to produce the originals, we held the secondary evidence was inadmissible. The Mulloy case followed the Lentz and Barnett cases. If secondary evidence is not objected to, its admission without accounting for the original, or giving notice for its production, if in the possession of the adverse party, is not reversible error. And an objection to testimony must specify the ground upon which the objection is made. An objection that the evidence is "irrelevant and incompetent and does not tend to prove any issue in the case," will not be considered by an appellate court. [Lumber Co. v. Rogers, 145 Mo. 455, 46 S. W. 1079; Kansas City v. Scarrit, 169 Mo. 471, 69 S. W. 283.] As said in Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, 76 S. W. 987, "such an objection amounts to no objection at all." [Johnston v. Parrott & Barnes, 92 Mo. App. 1. c. 201, and cases cited.] Defendant's objection to the county court records as evidence is too general to be of any avail on appeal. The county records show that a dramshop license had been granted defendant to keep a dramshop on lot 12, block 4, in the city of Monett, and the oral evidence showed that he did keep a dramshop on said lot. It is also shown by the sheriff's register of licenses collected (admitted without objection) that defendant received and paid for his license as a dramshop keeper. We think this evidence was sufficient to show that he was a licensed dramshop keeper.

The judgment is affirmed. All concur.