CITY OF WAXAHACHIE v. MISSOURI, K. & T. RY. CO. OF TEXAS.   (No. 7439.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 8, 1916. On Motion for Rehearing, Feb. 19, 1916.)

1. RAILROADS ☞243 — ORDINANCES — RAILROAD CROSSINGS—GATES AND WATCHMEN.

The power granted by Rev. St. art. 764, to a city incorporated under the general law to pass ordinances needed for the general welfare authorizes an ordinance requiring railroads to construct gates or keep a flagman at each crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 754, 757; Dec. Dig. ☞243.]

On Motion for Rehearing.

2. EVIDENCE ☞20 — RAILROADS ☞243 — ORDINANCES — RAILROAD CROSSINGS — WATCHMEN "ALL DURING THE DAY."

An ordinance requiring a railroad to keep a watchman at each crossing, who shall remain there "all during the day," that is, the whole 24 hours, is void as unreasonable on its face; the court judicially knowing that trains do not run at all times on any railroad in the state.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. ☞20; Railroads, Cent. Dig. §§ 754, 757; Dec. Dig. ☞243.]

Error from District Court, Ellis County; F. L. Hawkins, Judge.

Action by the City of Waxahachie against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiff brings error. Affirmed.

Neil C. Erwin, of Waxahachie, for plaintiff in error. G. C. Groce, of Waxahachie, for defendant in error.

RAINEY, C. J. This suit was brought by plaintiff in error against defendant in error to recover penalties for the violation of an ordinance of said city requiring all railroads operated through said city to maintain flagmen or gates at certain street crossings in said city. Defendant in error answered by general and special exceptions, and by general denial and special pleas. The exceptions were sustained, and, plaintiff in error refusing to amend, the cause was dismissed, and judgment rendered for defendant in error.

[1] The ordinance of said city of Waxahachie relied on was passed on March 7, 1911, and is as follows:

"Art. (1). That it shall be the duty of each corporation owning or operating any line of steam railway which now, or hereafter may run through the corporate limits of the city of Waxahachie, Texas, and over, on or across Washington street or College street or Rogers street to station and maintain a flagman at each point where its right of way crosses any one of aforesaid streets, or to erect and maintain at each of said points, the latest improved railway crossing gates, whereby any person or persons traveling on any one of said streets may be warned of the approach of any train or trains or car or cars or engine or engines on said line or lines of railway.

"Art. (2). Merely keeping a flagman at any one of said points while a train is in the switch yards of said corporation, or is approaching or leaving its depot, shall not be deemed a compliance with the provisions of this ordinance; but such corporation must maintain a flagman at each point where its right of way crosses any one or more of said streets, and it shall be necessary that such flagman remain at said point all during the day, and that he attend to the duty of flagman and giving timely warning to any and all persons approaching said right of way, on any one of the aforesaid streets, at said point, as to the coming of any car or cars, train or trains, or engine or engines.

"Art. (3). Any such corporation failing to comply with the provisions of this ordinance shall be liable in a penalty in the sum of ten dollars to the said city of Waxahachie; and each day said corporation shall fail, neglect or refuse to so maintain such flagman or shall fail, neglect or refuse to provide and maintain said railway crossing gates at said points, and each of them, shall constitute a separate offense; which penalty and penalties, shall be recoverable by and in the name of the city of Waxahachie, Texas, by a suit in any court of competent jurisdiction."

It appeared from the petition that the city was incorporated under the general municipal laws of Texas, and that the railway company had owned and operated its line of railway through the corporate limits of the city for 20 years prior to the institution of this suit, and that its line of railway crossed both Washington and Rogers streets, within the city.

The special exceptions sustained and relied on by the defendant in error are the first, third, and fifth, and are as follows:

(1) It does not appear from said petition that the plaintiff, under its charter of incorporation, had authority to enact the ordinance set out in its petition.

(3) The pretended ordinance upon which plaintiff's suit is based is unreasonable upon its face, and therefore void, in that it requires the erec-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

tion and maintenance of the crossing gates therein mentioned, or the keeping of a flagman at each of the crossings mentioned, all during the day, whether any train is approaching or not, and whether there would be any danger to approaching travelers from railway trains, or not, and in this respect such ordinance is unreasonably onerous, and therefore void.

(5) The plaintiff city being incorporated under the general municipal charter laws of this state, such laws confer upon it no right to enact the pretended ordinance set out in plaintiff's petition, and such pretended ordinance is void, and plaintiff has no right of action under it.

The city of Waxahachie being incorporated under the general municipal law of this state, the demurrer raises the question: Does said law grant to said city the power to pass and enforce the ordinance that forms the basis of this action? We think this question should be answered in the affirmative.

The powers granted to cities incorporated under said law are broad and comprehensive, and it was evidently intended by the lawmakers to embrace everything thought necessary for the proper government of the cities not inconsistent with state laws. In article 764, R. S., among the powers granted is: "May ordain and establish such acts, laws, regulations and ordinances, not inconsistent with the Constitution and laws of this state, as shall be needed for the government, interest, welfare and good order of said body politic," etc.

Article 863 relates to the use of steam railroads, and provides:

"To direct and control the laying and constructing of railroad tracks, turnouts and switches, or prohibit the same in the streets, avenues and alleys, unless the same have been authorized by law, and the location of depots within the city; to require that railroad tracks, turnouts and switches shall be so constructed as to interfere as little as possible with the ordinary travel and use of streets, avenues and alleys, and that sufficient space shall be left on either side of a track for the safe and convenient passage of teams, carriages and other vehicles, and persons; to require railroad companies to keep in repair the streets, avenues or alleys through which their track may run, and, if ordered by the city council, to construct, and keep in repair, suitable crossings at the intersection of streets, avenues and alleys, and ditches, sewers and culverts, when the city council shall deem it necessary; to direct the use and regulate the speed of locomotive engines in said city, or to prevent and prohibit the use or running of the same within the city; provided, that the provisions of this article shall apply to railroads known as steam railroads, and not to city, street or horse railroads."

While in neither article is the erection of gates and placing of guards specifically made, yet we think the power in the city is impliedly granted for the requiring of guards and gates at the crossing of streets in the general welfare clause above quoted. Such precaution was necessary for the safety of the persons traveling the streets, and under the law the city of Waxahachie was empowered to enact such ordinance. Seibert v. Railway Co., 188 Mo. 657, 87 S. W. 995, 70 L. R. A. 72; Ry. Co. v. Young, 81 Ga. 397, 7 S. E. 912, 12 Am. St. Rep. 320.

In the Seibert Case, supra, relating to the power of the city of St. Louis to pass an ordinance similar to the one here in controversy, after citing a paragraph of the charter of said city where it was authorized to control streets, etc., to regulate and control railroads on the constructions of railways, to regulate their fares, routes, trips, and tracks, etc., the opinion proceeds:

"Paragraph 14 confers power to pass all ordinances not inconsistent with the provisions of the charter or the laws of the state as may be expedient in maintaining the peace, good government, health, and welfare of the city. These express grants of power are ample to support the ordinance requiring the erection of such safety gates where railroads cross public streets. But, without such express grants, the power to pass such police regulations is an inherent power, necessary for the protection of the lives and persons of the citizens using the public streets. It is the duty of a city to take all such steps and precautions as are reasonably necessary to render its streets reasonably safe for use by citizens. There can be no two opinions that safety gates where railroads cross public streets are a necessary protection against accidents, and do not constitute a nuisance upon the street. * * * A safety gate at a point where a railroad crosses a public street is in no sense a private use of the street, but is clearly a police protection against injuries to persons passing along the street, in consequence of the passage of railway trains over the same, and such gates, therefore, cannot in any proper sense be said to be a nuisance on the street."

There is a conflict of authority on the proposition that the city has the right under the general "welfare" clause of the charter to pass an ordinance requiring railways to erect gates and place guards at crossings, and supporting this proposition appellee cites Ravenna v. Railway Co., 45 Ohio St. 118, 12 N. E. 445, and other cases.

We think, however, that under the laws of this state the city of Waxahachie was empowered to enact the ordinance in question, and therefore the court erred in sustaining the demurrer to the petition on that ground.

As to the sustaining of the demurrer attacking the ordinance on the ground of being unreasonable, the ordinance on its face does not show that it is unreasonable. The presumption obtains that the city council acted within the powers conferred by law upon it, and that the necessity existed for its passage. This presumption may be rebutted by evidence, but the petition is not subject to demurrer (Railway Co. v. Averill, 224 Ill. 516, 79 N. E. 654), and the court erred in that respect.

The judgment is reversed, and cause remanded.

### On Motion for Rehearing.

[2] After reconsidering this case, we have reached the conclusion that we erred in holding that the ordinance of the city of Waxahachie did not show on its face that it was unreasonable, and therefore not subject to demurrer. The ordinance, after requiring the railway company to maintain a flagman at each crossing, provides that:

"Merely keeping a flagman at any one of said points while a train is in the switch yards of said corporation, or is approaching or leaving

its depot, shall not be deemed a compliance with the provisions of this ordinance; but such corporation must maintain a flagman at each point where its right of way crosses any one or more of said streets, and it shall be necessary that such flagman remain at said point all during the day, and that he attend to the duty of flagman and giving timely warning to any and all persons approaching said right of way, on any one of the aforesaid streets, at said point, as to the coming of any car or cars, train or trains, or engine or engines."

This court judicially knows that trains do not run at all times during any given 24 hours on any railroad in Texas, which makes it clear that a flagman was not necessary at the crossing all during the day, as required by the ordinance. It was not enough, under the ordinance, that flagman should be present at the crossing when trains are approaching, but that he shall be present "at said point all during the day." This term embraces the time from midnight to midnight, and to comply with it would work a hardship on the railway company and be unreasonable. Muckenfuss v. State, 55 Tex. Cr. R. 229, 116 S. W. 51, 20 L. R. A. (N. S.) 783, 131 Am. St. Rep. 813, 16 Ann. Cas. 768; State v. Meagher, 124 Mo. App. 333, 101 S. W. 634.

Ordinarily a city ordinance is presumed to be valid, and its unreasonableness must be shown by evidence. But when, as in this case, it shows on its face to be unreasonable, it becomes a question of law and will be declared void. Such is the ordinance here under consideration.

Therefore the motion for rehearing will be granted, and the judgment will be affirmed.